UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In Re:

VERNELL ROBINSON,                               Case No. 19-18883-RAM

    Debtor.                                       Chapter 7

_____/

**RESPONSE AND OBJECTION TO DEBTOR'S MOTION FOR CONTEMPT**

COMES NOW Regional Acceptance Corporation ("RAC"), by its undersigned counsel, and hereby responds and objects to the Debtor's Motion for Contempt [Docket No. 49] and would show:

1. The Debtor filed chapter 7 on July 2, 2019.

2. The Creditors Meeting in this case was scheduled on August 6, 2019.

3. Pursuant to an agreement entered into in 2012 ("Contract"), the Debtor financed a 2012 Nissan Maxima ("Vehicle") with RAC. Under the terms of the Contract, the Debtor agreed to make 72 payments to RAC of $534.81 each month beginning on October 23, 2012.

4. During the term of the loan, the Debtor requested and RAC provided ten (10) monthly payment deferrals. Thus, the term of the Contract ended on July 23, 2019. The balance due at maturity was approximately $7,600.00.

5. Upon filing bankruptcy, the Debtor filed the Statement of Intention ("SOI") as required by Section 521 of the Bankruptcy Code [See Doc. No. 1, page 40 or 56]. The Debtor's SOI failed to address to RAC's secured claim as required by Section 521(a)(2)(A) of the

1

Bankruptcy Code. Therefore, pursuant to Section 362(h), the automatic stay terminated as a matter of law as to the Vehicle on September 6, 2019, thirty (30) days after the creditors meeting.

6. RAC at no time initiated contact with the Debtor after the case was filed. Even assuming *arguendo* that RAC did contact the Debtor to discuss whether the Debtor wanted to retain the Vehicle, there still would be no violation of the automatic stay under these facts.

7. On August 22, 2019 the Debtor called RAC to discuss the status of account. RAC explained to the Debtor that the loan had matured, and the current balance was $7,232.38. The Debtor requested a reaffirmation agreement.

8. On or about August 23, 2019 RAC sent a Reaffirmation Agreement to the Debtor's attorney.

9. RAC never received back a signed reaffirmation agreement.

10. RAC's records show that on September 23, 2019 at 7:47 PM the Debtor's went online and made a voluntary payment of $2,000 to RAC on the account.

11. After receipt of the above payment from the Debtor, the balance due on the account was $5,787.69.

12. The discharge was entered in this case on October 11, 2019; however, the case remains open. RAC put the account on hold based on the outstanding reaffirmation agreement, and took no further action.

13. The Debtor has made no further payment to RAC since September 23, 2019, but the Debtor has retained the use and possession of the Vehicle.

14. On March 26, 2020, the Debtor filed a Motion for Contempt [Dec. No. 49]. The Debtor did not attach a copy of a reaffirmation agreement to the Motion for Contempt.

15. In the Motion for Contempt, the Debtor alleges his $2,000 voluntary payment made on September 23, 2019 somehow constituted a violation of the automatic stay. In his Motion – filed more than six (6) months after the payment – the Debtor states "with no Reaf Order it was a violation of the bankruptcy stay under section 362 (k) to collect any monies from the debtor. It was an unconscionable violation to force the debtor to pay $2,000 to retain her car".

16. On March 30, 2020 the Debtor's counsel provided the undersigned with a copy of the Reaffirmation Agreement signed by the Debtor on September 17, 2019, which is attached to this Response. In the Reaffirmation Agreement signed by the Debtor, the Debtor agreed to repay the loan as follows:

> *Reaffirmation Agreement Repayment Terms: If fixed term, **$584.81**
> per month for **until paid in full** months starting on **6/23/2019**.*

17. The Debtor's voluntary payment of $2,000 made on September 23, 2019, six days after he signed the Reaffirmation Agreement, clearly represents payments due from June to September, 2019, **completely consistent** with the payment terms in the Reaffirmation Agreement the Debtor agreed to!

18. The Debtor's claim of a violation of the automatic stay is without merit. First, a Chapter 7 debtor who wants to retain a vehicle has to either continue making payments or file a

motion to redeem and make a lump sum payment as required by Section 722.  Second, Chapter 7 debtors routinely make vehicle payments in order to retain possession of a vehicle post-petition.  Third, Chapter 7 debtors routinely discuss reaffirmation and payment terms with lenders in order to retain possession of a vehicle.  Fourth, the Debtor was not "damaged" by making a payment to retain possession of the Vehicle.

19. RAC denies the allegation it told the Debtor that he needed to pay $2,000 to keep the car.  But even assuming that was the case, this payment would not constitute a violation of the automatic stay as this represented a voluntary payment by the Debtor, a payment made pursuant to the terms of the very Reaffirmation Agreement which the Debtor signed.

20. The Debtor's claim is barred by the doctrine of laches.  The Debtor, who has used the vehicle for the last 6 months without making any payments, waited six months before alleging that his September 23, 2019 voluntary payment somehow represented a violation of the automatic stay.

21. Since the Debtor has continued in possession of the Vehicle, the Debtor has suffered no actual or other damages.

22. In addition to the foregoing, since the Debtor concedes he signed a Reaffirmation Agreement provided by RAC, any discussions with RAC about reaffirmation or payments would not be a violation of the automatic stay.  As this Court found in *In re Estrada*, 439 B.R. 227 (Bankr. S. D. Fla. 2012):

> "Courts generally agree that a creditor may send a postpetition letter to a debtor proposing a reaffirmation agreement without violating the automatic stay. *See e.g., Jamo v. Katahdin Federal Credit Union,* 283 F.3d 392 (1st Cir.2002); *In the Matter of Duke,* 79 F.3d 43 (7th Cir.1996).  However, the creditor's communication regarding reaffirmation must not be threatening or coercive.

> Specifically, this Court agrees with and adopts the First Circuit's holding in *Jamo* that "while the automatic stay is in effect, a creditor may engage in post-petition negotiations pertaining to a bankruptcy-related reaffirmation agreement so long as the creditor does not engage in coercive or harassing tactics." 283 F.3d at 399.
>
> In *Jamo,* the First Circuit concluded that the credit union did not engage in impermissibly coercive conduct by offering to allow reaffirmation of a secured debt only if the debtors also reaffirmed their unsecured debt to the credit union. Noting that reaffirmation agreements are consensual, the court found that it was permissible for a creditor to agree to reaffirmation of a secured debt only if the debtors also reaffirmed their unsecured debt. Id. at 400".

*See also In re Adams*, 589 B.R. 211 (Bankr. M.D. Ga. 2018) (Court held that a creditor did not violate automatic stay merely by refusing to return payment that the debtor voluntarily made post-petition with funds that were borrowed from a post-petition lender and thus not estate property).

23. RAC requests the Court to confirm that the automatic stay as to the vehicle is no longer in effect.

24. RAC advised Debtor's counsel of the foregoing facts and law and asked the Debtor to withdraw the Motion, but Debtor's counsel refused to do so.

25. RAC has retained the undersigned attorneys to represent them in this case.

WHEREFORE, RAC requests the Court to deny the Motion for Contempt, confirm the

automatic stay is not in effect as to the vehicle, award attorneys fees to RAC, and for such other

relief as the Court finds just.

I HEREBY CERTIFY THAT I AM ADMITTED TO THE BAR OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA AND I AM IN COMPLIANCE WITH THE ADDITIONAL QUALIFICATIONS TO PRACTICE IN THIS COURT SET FORTH IN LOCAL RULE 2090-1(A).

/s/DENNIS J. LEVINE, ESQ.
DENNIS J. LEVINE, ESQ.
Fla. Bar No. 375993
KELLEY KRONENBERG ATTORNEYS AT LAW
1511 N. Westshore Blvd., Suite 400
Tampa, FL 33607
(813) 223-1697
(813) 433-5275 (fax)
E-mail: dlevine@kelleykronenberg.com
Attorneys for RAC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Response was furnished by either Electronic or U.S. Mail to the parties listed below on this 31st day of March, 2020.

/s/DENNIS J. LEVINE, ESQ.
ATTORNEY

Vernell Robinson
2031 NW 194th Ter
Miami Gardens, FL 33056-2746

Lawrence M. Shoot, Esq.
4830 SW 92 Ave
Miami, FL 33165

Barry Mukamal, Trustee
P. O. Box 14183
Ft. Lauderdale, FL 33302